UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA PRATHER,

                Plaintiff,                CIVIL ACTION NO. 11-15638

                                    DISTRICT JUDGE ROBERT H. CLELAND

        v.                        MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 9) AND GRANT
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 13)**

## I.  PROCEDURAL HISTORY

### A.  *Proceedings in this Court*

On December 27, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's

decision to deny her social security benefits (Dkt. No. 1).  Cross-motions for summary judgment

are pending (Dkt. Nos. 9, 13).  Judge Robert H. Cleland referred the motions to this Magistrate

Judge for a report and recommendation (Dkt. No. 2).

### B.  *Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on August 18, 2008,

alleging a disability onset date of January 15, 2005 (Tr. 17).  The Commissioner initially denied

Plaintiff's claim on November 24, 2008 (Tr. 17).  On April 8, 2010, Plaintiff appeared with

counsel for a hearing before Administrative Law Judge ("ALJ") Janet Mahon, who considered

the case *de novo*.  In a decision dated May 7, 2010, the ALJ found that Plaintiff was not disabled

(Tr. 17-28).  Plaintiff requested an Appeals Council review of this decision (Tr. 1).  On October 28, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for further review (Tr. 1-3).

In light of the entire record, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

## II.    STATEMENT OF FACTS

### A.    *ALJ Findings*

In analyzing Plaintiff's claim, the ALJ applied the five-step disability analysis and found at step one that Plaintiff had not engaged in substantial gainful activity (Tr. 19).

At step two, the ALJ found Plaintiff had the following "severe" impairments: fibromyalgia,[1] degenerative joint disease and obesity (Tr. 19).

At step three, the ALJ found no evidence that Plaintiff had an impairment or combination of impairments that met or medically equaled one of the listed impairments in the regulations (Tr. 20).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform the full range of sedentary work[2] (Tr. 20).

---

[1]Fibromyalgia is pain and stiffness in the muscles and joints.  *See Dorland's Illustrated Medical Dictionary*, 711 (31st Ed. 2007).

[2]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  20 CFR §404.1567(a).

At step four, the ALJ found that Plaintiff could not perform her past relevant work (Tr. 27).

At step five, the ALJ denied Plaintiff benefits, finding she could perform work as a service system monitor (81,000 jobs available nationally; 890 jobs locally) and an order caller (33,000 jobs available nationally; 550 jobs locally) (Tr. 28).

**B.     Administrative Record**

**1.     Plaintiff's Testimony & Statements**

Plaintiff was 41 years old on her alleged disability onset date.  She is a high school graduate.  Plaintiff testified that she tore her right rotator cuff in 2005 while working at a law firm as a file clerk (Tr. 40).  After sustaining this injury, her entire body began to ache (Tr. 43). Plaintiff says it is painful to sit down; she has fibromyalgia, depression, carpal tunnel syndrome, insomnia, restless leg syndrome, constant pain in her knees, bone spurs, two bulging discs in her back, degenerative arthritis and numbness in her leg (Tr. 44-45, 47, 51-52).  Plaintiff's medications cause her dry mouth, fatigue and upset stomach (Tr. 46).

Plaintiff takes naps during the day, reads and watches television (Tr. 47).  She testified that she cannot wash dishes, do laundry, cook, write an entire letter without stopping or lift a gallon of milk (Tr. 48, 51-52).  Plaintiff uses a walker; her husband helps her in and out of the bathtub (Tr. 48-49).  She cannot walk from the parking lot to the store, and she rarely drives (Tr. 49).  When Plaintiff uses the telephone, she frequently alternates hands, otherwise, within minutes, they become numb (Tr. 51).

**2.     Vocational Expert**

During the hearing, the ALJ asked a vocational expert ("VE") to assume a hypothetical individual who is 41 years old with a 12th grade education and Plaintiff's vocational

background. The individual can lift 20 pounds occasionally and 10 pounds frequently; can sit, stand, and walk six hours in an eight-hour workday; should avoid concentrated exposure to vibrations; and cannot squat, bend or stoop.  (Tr. 57).  The VE testified that such an individual could perform Plaintiff's past work as an enumerator.  (Tr. 57).

In the second hypothetical, the ALJ modified the sit/stand limitations to an individual who can:  sit for six hours in an eight-hour workday, has limited capacity to stand, can only walk two hours in an eight-hour workday with an assistive device, and must avoid concentrated exposure to vibrations (Tr. 58).  The VE testified that such an individual could perform work as a surveillance system monitor (81,000 jobs available in the nation; 890 jobs in Florida[3]) and order caller (33,000 jobs available in the nation; 550 jobs in Florida) (Tr. 58).

Plaintiff's attorney asked the VE to assume a hypothetical individual who: is the same age as Plaintiff; has the same educational and work background; cannot sit or stand for more than an hour; and is markedly limited in grasping, turning and twisting objects with both hands, using fingers and hands for fine manipulations, and using arms for reaching.  In addition, the individual's conditions constantly interfere with her ability to concentrate, and she would likely be absent more than three times a month (Tr. 58-59).  The VE testified that such an individual would be precluded from work (Tr. 59).

### C.      Plaintiff's Claims of Error

Plaintiff argues that the ALJ's decision is not supported by substantial evidence in the record and is contrary to the Social Security Act, because the ALJ did not give Plaintiff's treating physician's opinions (Dr. Maria Concepcion) the proper weight, erred in her RFC determination and improperly evaluated Plaintiff's credibility.

---

[3]At the time, Plaintiff lived in Florida; she now lives in Michigan.

### III.    DISCUSSION

#### A.    *Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *See Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a government agency makes the initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *See Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant

when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (internal quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only.  *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its

weight.  *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in [her] written decision every piece of evidence submitted by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

### B.      Governing Law

The "[c]laimant bears the burden of proving [her] entitlement to benefits."  *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).  There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq.*).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of
> any medically determinable physical or mental impairment which

> can be expected to result in death or which has lasted or can be
> expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 CFR § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial
> gainful activity, benefits are denied without further analysis.

> Step Two:  If the claimant does not have a severe impairment or
> combination of impairments, that "significantly limits...physical or
> mental ability to do basic work activities," benefits are denied
> without further analysis.

> Step Three:  If the claimant is not performing substantial gainful
> activity, has a severe impairment that is expected to last for at least
> twelve months, and the severe impairment meets or equals one of
> the impairments listed in the regulations, the claimant is
> conclusively presumed to be disabled regardless of age, education
> or work experience.

> Step Four:  If the claimant is able to perform his or her past
> relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past
> relevant work, if other work exists in the national economy that the
> claimant can perform, in view of his or her age, education, and
> work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, Case No. 08-10279, 2008 WL 4793424 (E.D. Mich. Oct. 31, 2008), citing, 20 CFR §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If

the analysis reaches the fifth step without a finding that the claimant is disabled, the burden

shifts to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in significant numbers

exist in the national economy that [claimant] could perform given her RFC and considering

relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 CFR §§ 416.920(a)(4)(v) and (g).

### C.      *Analysis and Conclusions*

#### 1.      **The ALJ Did Not Err in her Assessment of Plaintiff's Treating Physician's Opinions[4]**

##### a.      *Dr. Maria Concepcion's  Opinion Regarding Plaintiff's Ability to Work*

In a letter dated March 16, 2010, Dr. Concepcion stated:

I certify that Mrs. Prather is permanently disabled due to the following reasons:

She has physical and mental impairments that substantially limit her life activities
as an individual with regards to walking, caring for self, working, sitting,
standing, bending, twisting, reaching, gripping, and even socializing.

She has been diagnosed with Fibromyalgia syndrome, Restless leg[] syndrome,
Peripheral neuropathy, Carpal tunnel syndrome, . . . Anxiety, and Osteoarthritis.
The combination of [the] above said medical conditions and chronic pain that she
has disallows her from functioning with day to day activities without the help of
her husband.  She has been treated by me, her previous medical doctor and
specialists, and I believe she has reached maximal medical management with little
improvement.

(Tr. 743).

##### b.      *Dr. Maria Concepcion's Opinion Regarding Plaintiff's Physical and Mental Limitations*

---

[4]Plaintiff began treating with Dr. Concepcion on September 30, 2009 (Tr. 744).

On April 1, 2010, Dr. Concepcion completed a Multiple Impairment Questionnaire and indicated Plaintiff can only sit, stand and walk for an hour, can never lift or carry anything and repetitive reaching and lifting exacerbates her pain (Tr. 746-747).  Dr. Concepcion found Plaintiff markedly limited in her ability to grasp, turn and twist objects; using fingers and hands for fine manipulations; and using arms for reaching (Tr. 747-748).  She added that major depressive disorder contributed to Plaintiff's symptoms and functional limitations and opined that Plaintiff cannot tolerate even "low stress" (Tr. 749).  Dr. Concepcion noted that Plaintiff would likely miss more than three scheduled workdays a month and precluded her from pushing, pulling, kneeling, bending and stooping (Tr. 750).  Finally, Dr. Concepcion found Plaintiff's pain and fatigue constantly interferes with her attention and concentration (Tr. 749).

### c.    *Analysis*

A treating physician's opinion is given greater deference than that of a non-treating physician; this is commonly known as the treating physician rule.  *See* SSR 96–2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  "An ALJ must give the opinion of a treating source controlling weight if [she] finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and not inconsistent with the other substantial evidence in [the] case record.'"  *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(d)(2)).  Even where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, she must apply the following factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 C.F.R. §§ 416.927, 404.1527.

-10-

More important for purposes of this case is that 20 C.F.R. § 404.1527(d)(2) (and § 416.927) "contain[ ] a clear procedural requirement." *Wilson*, 378 F.3d at 544.  In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  The purpose of this requirement is twofold:  first, the explanation "let[s] claimants understand the disposition of their cases, particularly where a claimant knows that [her] physician has deemed [her] disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reason for the agency's decision is supplied." *Wilson*, 378 F.3d at 544 (internal quotation marks omitted).  Second, the explanatory requirement "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

Here, the ALJ stated the following regarding Dr. Concepcion's opinions:

> little weight will be given to the assessment of Dr. Concepcion as it is not supported by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record.  Moreover, on February 25, 2010 Dr. Concepcion noted that [Plaintiff's] prescribed medications provided adequate relief.  Laboratory findings showed normal renal functioning and creatinine levels.[5] [Plaintiff] reported that despite her illness, she was able to perform activities of daily living and was able to work.  She was not anxious, frustrated, or depressed about it.  She reported no recent hospitalization or emergency room visits.  An examination of the knees was normal with no limitation in range of motion or swelling.  She ambulated without assistance.  She was able to sit on the examination table without difficulty or evidence of pain.

---

[5]"Renal functioning" measures how efficiently the kidneys filter blood and "creatinine" is measured to determine whether a person has impaired kidney function or kidney disease.  *See* http://kidney.niddk.nih.gov/kudiseases/pubs/yourkidneys/#renal (last visited January 14, 2013) and http://www.medicine.net.com/creatinine_blood_test/article (last visited January 14, 2013). This does not have anything to do with Dr. Concepcion's opinion that Plaintiff has physical and mental limitations that preclude her from working.

> She reported painful knee movements and tenderness.  She had a full range of
> motion of the wrists bilaterally.  (Exhibits 31-33F).

(Tr. 26).  This Magistrate Judge finds the ALJ appropriately rejected Dr. Concepcion's March

16, 2010 opinion, because her conclusion that Plaintiff is permanently disabled is an issue

reserved to the Commissioner.  *See* 20 CFR § 404.1527(d)(3) ("[w]e will not give any special

significance to the source of opinion on issues reserved to the Commissioner").  Accordingly,

this Magistrate Judge focuses on Dr. Concepcion's April 1, 2010 opinion that Plaintiff can only

sit, stand and walk for an hour; can never lift or carry anything; cannot grasp, turn and twist

objects or use fingers and hands for fine manipulations; cannot use arms for reaching; and cannot

push, pull, kneel, bend or stoop.[6]

This Magistrate Judge agrees with Plaintiff's argument that Dr. Concepcion's April 2010

opinion was supported by medically acceptable clinical and laboratory diagnostic techniques.

The ALJ found that Dr. Concepcion's clinical findings included "a gait abnormality; painful

range of motion of the bilateral knees; all over body tender points; decreased painful range of

motion of the bilateral writs; and decreased touch sensation of the bilateral feet and ankles."  (Tr.

25).

However, substantial evidence supports the ALJ's determination that Dr. Concepcion's

opinion was inconsistent with other evidence in the record.  On August 9, 2007, Plaintiff had a

near full range of motion (Tr. 21, 352).  On August 27, 2008, Plaintiff could walk on her heels

and toes almost pain free; reach down, touch the floor and return to the upright position; and

squat and return to the upright position about 80% of the way.  She also had full elbow flexion,

elbow extension, wrist extension, finger adduction, finger opposition and grip; full knee

---

[6]When Dr. Concepcion rendered this opinion, she had only seen Plaintiff approximately
six times.

extension strength; full passive range of motion in the right shoulder; full left shoulder abduction; slightly reduced right shoulder abduction; and full shoulder abduction strength (Tr. 23, 486-487). On November 14, 2008, Plaintiff had normal motor strength (Tr. 24, 521). On November 18, 2008, an RFC assessment of Plaintiff indicated she had no manipulative limitations; she could occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; sit, stand and walk six hours; and occasionally kneel and stoop (Tr. 26, 524-526). On February 25, 2010, Plaintiff reported to Dr. Concepcion that she could perform activities of daily living (Tr. 25, 752).[7] Last, on March 26, 2010, Plaintiff reported that she swam daily, and she could bathe herself, clean the house, cook, dress herself, drive, and feed herself. In addition, she walked to the examination room without assistance; sat comfortably on the examination table without difficulty or evidence of pain; had full flexion, extension, adduction, abduction and internal and external rotation in her knee joints (although movements were painful with flexion beyond 30 degrees); and had a full range of motion in her wrists (with gravity eliminated) (Tr. 25, 759).

This Magistrate Judge finds the ALJ provided "good reasons" for not affording Plaintiff's treating physician's opinions controlling weight, and declines to disturb her decision on appeal.

Further, non-reviewing state agency physician, Dr. Muhammad Khalid, opined that Plaintiff had the RFC for light work except she could perform posturals occasionally (climbing, balancing, stooping, kneeling, crouching and crawling) (Tr. 523-530). Plaintiff argues that the ALJ improperly assigned greater weight to Dr. Khalid's opinion than to Dr. Concepcion's opinions. This Magistrate Judge disagrees.

---

[7]In that same document, Dr. Concepcion noted that "[d]ue to her illness, [Plaintiff] has been . . . impaired in [activities of daily living], [and] unable to work" (Tr. 752).

Non-examining sources are viewed as "highly qualified physicians . . . who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." SSR 96-6p. Accordingly, the ALJ weighs state agency physician opinions under the same factors as treating physicians, and the ALJ did not err by affording Dr. Khalid's opinion "great" weight. *See Dee v. Comm'r of Soc. Sec.*, 2011 WL 4072299 at *12 (N.D. Ohio Sept. 7, 2011). The ALJ also did not err in finding Plaintiff could perform a full range of sedentary work instead of adopting Dr. Khalid's opinion that Plaintiff could perform light work with additional limitations in climbing, balancing, stooping, kneeling, crouching and crawling.[8] *See Grohoske v. Comm'r of Soc. Sec.*, 2012 WL 2931400 at *5 (N.D. Ohio July 18, 2012):

> The clear teaching of the Sixth Circuit is that the responsibility of determining a claimant's RFC rests with the ALJ. In that respect, although an ALJ may not substitute his opinion for that of a physician, the ALJ is not required to accept *verbatim* the RFC finding of a physician. Indeed, the opinion of a consultative examiner is relevant to, but not dispositive of, the RFC determination, which remains with the ALJ. In that respect, the ALJ does not improperly assume the role of a medical expert by assessing both the medical and non-medical evidence before rendering an RFC finding.

(Citations omitted) (emphasis in original).

### 2.    The ALJ Did Not Err in Her Credibility Determination

The ALJ stated the following regarding Plaintiff's credibility:

> [a]fter careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

> .    .    .

> [i]n sum, while it is reasonable to conclude that [Plaintiff] should have some pain and/or limitations as a result of her physical impairments, the evidence as a whole

_____

[8]Sedentary work is more restrictive than light work.

> does not substantiate such severe functional limitations that would preclude her from all work-related activity as is required under Social Security rules and regulations. [Plaintiff] received conservative treatment and she was diagnosed with mostly mild symptoms, [a] fact that does not support a finding of greater limitation than indicated by the objective evidence. Accordingly, [the ALJ] find[s] [Plaintiff's] stated symptoms somewhat exaggerated over that [which] would be expected based on the medical findings in the record.

(Tr. 21, 27). Plaintiff relies on *Bjornson v. Astrue*, 671 F.3d 640 (7th Cir. 2012) to support her argument that the ALJ's use of boilerplate language was improper when making a credibility determination.

> The ALJ in *Bjornson* stated the following regarding the claimant's credibility:

> [a]fter careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Bjornson*, 671 F.3d at 644. The *Bjornson* court identified two problems with the boilerplate language: (1) the assessment of the claimant's RFC came after the boilerplate; and (2) the passage implies that ability to work is determined first and is then used to determine the claimant's credibility; however, the assessment of a claimant's ability to work will often depend heavily on the credibility of her statements concerning the "intensity, persistence and limiting effects" of her symptoms. *Id.* at 645. The court added:

> Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case.

*Id.* (quoting *Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004)). This Magistrate Judge understands and appreciates Plaintiff's concern with the Defendant's use of boilerplate language,

but looks to Sixth Circuit precedent to determine if the ALJ correctly analyzed Plaintiff's

credibility in this case despite the use of boilerplate.[9]

   In the Sixth Circuit, if the ALJ rejects the testimony of the Plaintiff as not being credible,

the reasons for that conclusion must be clearly stated.  *Felisky*, 35 F.3d at 1036.  In particular,

the ALJ must follow the requirements of, among other provisions, 20 CFR § 404.1529 as well as

SSR 96-7p.

   SSR 96-7p provides that:

> the adjudicator must consider the entire case record and give
> specific reasons for the weight given to the individual's statements.
> The finding on credibility of an individual's statements cannot be
> based on an intangible or intuitive notion about an individual's
> credibility.  The reasons for the credibility finding must be
> grounded in the evidence and articulated in the determination or
> decision.  It is not sufficient to make a conclusory statement that
> "the individuals allegations have been considered" or that "the
> allegations are (or are not) credible."  It is also not enough for the
> adjudicator simply to recite the factors that are described in the
> regulations for evaluating symptoms.  The determination or
> decision must contain specific reasons for the finding on
> credibility, supported by the evidence in the case record, and must
> be sufficiently specific to make clear to the individual and any
> subsequent reviewers the weight the adjudicator gave to the
> individual's statements and the reasons for that weight.  This
> documentation is necessary in order to give the individual a full
> and fair review of his or her claim, and in order to ensure a well-
> reasoned determination or decision.

The factors described in the regulations for evaluating symptoms include:

   (i)   Your daily activities;

   (ii)  The location, duration, frequency and intensity of your pain or other
         symptoms;

---

[9]It also should be noted here that "the decision to reverse and remand *Bjornson* for
further proceedings did not turn on the use of boilerplate language and templates.  The Seventh
Circuit remanded *Bjornson* because it found that the ALJ mischaracterized the medical evidence.
*See Liveoak v. Astrue*, 2012 WL 6878886 at *7 (N.D. Okla. Dec. 22, 2012).

      (iii)     Precipitating and aggravating factors;

      (iv)     The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

      (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

      (vi)     Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and

      (vii)     Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 CFR § 404.1529(c)(3).  Plaintiff argues that "[d]espite [her] extensive testimony on her symptoms, limitations, limited daily activities, and lack of response to treatment . . the ALJ failed to reject her testimony under any of the factors listed in SSR 96-7p"[10] (Dkt. No. 9 at 20).

The ALJ considered Plaintiff's symptoms:  "[Plaintiff] testified that as a result of a rotator cuff tear in January 2005[,] she was unable to work. [S]he reported that she was diagnosed with fibromyalgia and had pain in her back, feet, knees, and legs. [I]n addition, she stated that she had problems with her hands and feet with associated numbness" (Tr. 21).

The ALJ also considered Plaintiff's limitations: "[Plaintiff] stated that she had problems with her personal care and used a walker as needed.  She was unable to sit [two] hours; standing and walking caused her a problem because of a fear of falling due to foot numbness.  She was unable to lift a gallon of milk" (Tr. 21).

With regard to her daily activities, Plaintiff testified that she could not do laundry, wash dishes or cook (Tr. 48), but the ALJ considered the fact that she told Dr. Concepcion that "despite her illness, she is able to perform activities of daily living" (Tr. 25-26, 752).

---

[10]Plaintiff's alleged lack of response to treatment is not a factor the ALJ considers under SSR 96-7p.

The ALJ thoroughly reviewed the record and concluded that Plaintiff's testimony was not fully credible. This Magistrate Judge finds that notwithstanding the ALJ's use of boilerplate language, substantial evidence supports her credibility determination. *See Webb v. Astrue*, 2012 WL 3061565 at \*22 (N.D. W.Va. June 21, 2012) ("Although the ALJ may have used a 'template' to draft her decision, the substance of the decision itself supports the credibility determination") (citation omitted).

### 3.      The ALJ Did Not Err in Her RFC Determination

Finally, Plaintiff argues that the hypothetical to the VE, and in turn, the ALJ's RFC determination was flawed, because the ALJ did not include Plaintiff's inability to use her arms and hands effectively on a sustained basis.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that [she] accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325 at \*6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

As stated above, substantial evidence supports the ALJ's finding that Plaintiff's testimony regarding her "significant" manipulative limitations was not entirely credible.

Accordingly, the ALJ was not required to include Plaintiff's ability to use her arms and hands in her hypothetical limitations.

## IV.    CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise  response  proportionate to the objections in length and complexity.  *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule

without awaiting the response.

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: January 23, 2013

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, January 23, 2013, by electronic and/or ordinary mail.*

*s/Eddrey Butts*
*(Substitute)*
*Case Manager to Magistrate Judge Mark A. Randon*

-20-