UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRENDA KAY PRATHER,

    Plaintiff,

v.                                  Case No.  11-15638

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
                                      /

**OPINION AND ORDER REJECTING THE REPORT AND RECOMMENDATION,
REVERSING THE DECISION OF THE SOCIAL SECURITY ADMINISTRATION,
AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Brenda Prather objects to the magistrate judge's report recommending that the district court affirm a denial of Social Security disability benefits.  A party may seek *de novo* review by the district court of any part of a report to which the party explicitly objects, 28 U.S.C. § 636(b)(1), and Plaintiff raises two objections—she challenges the Social Security Administration's decision, approved by the magistrate judge, to discount both (1) a treating physician's opinion and (2) Plaintiff's credibility. Because both objections succeed, this action will return to the Social Security Administration for further consideration.

At a hearing before a Social Security Administration (SSA) administrative law judge (ALJ), Plaintiff, forty-nine years old, testified that she suffers from fatigue and from pain in her back and limbs; that she struggles to walk, needing a walker to go short distances (she cannot get across a parking lot); that she suffers numbness in her hands, which leaves her with little grip; that she cannot carry a gallon of milk; and that

she needs assistance getting in and out of the bathtub. (Tr. 45, 48-52.) Her treating physician, a state-appointed physician, and a third physician concur that Plaintiff suffers from fibromyalgia. (Tr. 524, 692, 744.) The treating physician concluded that the fibromyalgia causes Plaintiff pain and tenderness all over her body. The treating physician also confirmed that Plaintiff's range of motion, strength, and ability to sit or stand are severely limited. According to her, Plaintiff can barely reach or grip, can lift no more than five pounds, and can sit for no more than an hour at a time. (Tr. 746-48.) The treating physician based her diagnosis in part on an x-ray showing that Plaintiff has degenerative disc disease and on an EMG showing that she has carpel tunnel syndrome. (Tr. 745.)

In her written decision, the ALJ declared both the treating physician's opinion and Plaintiff's testimony inconsistent with the record. Based on the opinions of the state-appointed physician and a vocational expert, (*see* Tr. 57-58), the ALJ decided that Plaintiff can occasionally lift twenty pounds, can frequently lift ten pounds, can sit for six out of eight hours, and can therefore perform sedentary work. Concluding that Plaintiff is not disabled, the ALJ denied benefits.

Plaintiff argues first that the ALJ failed to observe the SSA's "treating source" rule. Under that rule, an ALJ must assume the accuracy of a treating physician's opinion if the opinion is both supported by proper clinical and laboratory practice and not inconsistent with other substantial evidence in the record. *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

The ALJ said that the treating physician's opinion "is not supported by medically acceptable clinical and laboratory diagnostic techniques[.]" (Tr. 26.) That is not true.

2

The treating physician used x-rays and an EMG to support her opinion, and she reported clinical findings, for example, that Plaintiff displays an abnormal gait, a curtailed range of bilateral motion in her knees and her wrists, diminished sensation in her feet and ankles, and tenderness all over her body. (Tr. 744-48.)

The ALJ said also that the treating physician's opinion is "inconsistent with the other substantial evidence in the record." (Tr. 26.) To support this conclusion the ALJ needed, after considering an array of factors, 20 C.F.R. § 404.1527(d), to provide "good reasons" for finding the treating physician's opinion inaccurate, *id.*; *see Wilson v. Comm. Soc. Sec.* 378 F.3d 541, 544-45 (6th Cir. 2004). Instead of providing good reasons, the ALJ placed after her conclusion a mélange of disparate facts. She wrote that "laboratory findings showed normal renal functioning," but no one had claimed that Plaintiff is disabled by a kidney problem. She said that Plaintiff "reported no recent hospitalization or emergency room visits," as if avoiding the emergency room proves anything besides an absence of emergencies. And she said that Plaintiff "was able to sit on [an] examination table without difficulty or evidence of pain," yet she never explained how this shows Plaintiff can sit for more than an hour. (Tr. 26.)

Although the ALJ included three facts that sound more pertinent, her list remains flawed and incomplete. First the ALJ noted that, according to the treating physician, Plaintiff's medication "provides adequate relief." That point, presented alone, is misleading, for the treating physician agreed merely that medication can relieve some of Plaintiff's pain, and not that it can increase her capability (her strength, energy, ability to sit, and so on). Moreover, Plaintiff testified that her medication just "makes it so [she's] not crying with the pain" and that it leaves her "very tired and sort of loopy." (Tr. 46.)

3

The ALJ ignored the possibility that, by "adequate" relief, the treating physician meant merely "not crying with the pain" while "very tired and sort of loopy." Second, the ALJ stated that Plaintiff at some unidentified time displayed normal range-of-motion in her knees and full bilateral motion in her wrists. In the same paragraph of her decision, however, the ALJ acknowledged, without any effort at reconciling the discrepancy, that Plaintiff had also reported "painful knee movements and tenderness." Worse, the ALJ never explained how some movement in Plaintiff's knees and wrists erodes the treating physician's opinion about Plaintiff's inability to sit, stand, reach, or grip. Third, the ALJ noted that one of the treating physician's reports says, "Patient states that despite her illness, she is able to perform activities of daily living and is able to work. She is not anxious, frustrated, or depressed about it." (Tr. 752.) The ALJ neglected to mention that the same report says also, on the same page, "Due to her illness, [Plaintiff] has been anxious, depressed, frustrated, . . unable to work and worried." The ALJ also never said why a single statement from a past report trumped the treating physician's later assessments and Plaintiff's later testimony.

In short, the ALJ failed to explain the logical connection between each fact in her list and the weight due the treating physician's opinion. She failed to provide good reasons for dismissing the treating physician's opinion and, therefore, she violated the treating source rule. See Wilson, 378 F.3d at 544-45. Further, although an ALJ has broad discretion in weighing evidence, she must address facts that plainly undermine her decision. See Howard v. Comm. of Soc. Sec., 276 F.3d 235, 240-41 (6th Cir. 2002). The ALJ erred by ignoring obviously adverse evidence. And further still, a treating physician's opinion given less than controlling weight is, unless thoroughly

4

rebutted, entitled to "great deference." *Rogers v. Comm. of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  The ALJ not only failed to defer to the treating physician's opinion; she rejected it haphazardly.

Of course, an ALJ might use another physician's opinion as a reason to dismiss the opinion of the treating physician.  The ALJ attempted to do that.  She cited an evaluation by a state-appointed physician—a pediatrician, apparently—who never examined Plaintiff, and who never saw the records of the treating physician, but who stated, nonetheless, that Plaintiff can perform light work.  (Tr. 523-29.)  Yet all the ALJ said was: "The undersigned gives great weight to the opinion [of the state's physician] and finds his opinion is well supported and consistent with the medical evidence."  (Tr. 26.)  A bare conclusion.  Again the ALJ provided no reasoning.  Another physician's disagreeing with the treating physician is not, by itself, a sufficient ground for an ALJ to reject the opinion of the treating physician.  *Hensley*, 573 F.3d at 266.  In declaring, without analysis, her preference for the opinion of the state-appointed physician, the ALJ merely identified a disagreement.  She failed to justify discounting the treating physician's opinion.

Plaintiff's other argument is that the ALJ improperly rejected Plaintiff's testimony.  Although the ALJ alone evaluates the credibility of a witness, the ALJ must base her evaluation on an explicit analysis of the record.  *Rogers*, 486 F.3d at 247-48.  Explicit reasoning is especially important when a claimant has a condition such as fibromyalgia.

No one—no doctor, no party—denies that Plaintiff suffers from fibromyalgia.  This condition tends to cause insomnia, fatigue, stiffness, and, above all, tenderness and

pain all over the body. These subjective symptoms elude modern testing. It follows that the testimony of a claimant with fibromyalgia must receive close attention:

> Given the nature of fibromyalgia, where subjective pain complaints play an important role in the diagnosis and treatment of the condition, providing justification for discounting a claimant's statements is particularly important. . . . [T]he nature of fibromyalgia itself renders . . . a brief analysis [of a claimant's] credibility and over-emphasis upon objective findings inappropriate.

*Rogers*, 486 F.3d at 248; *see also Credibility*, SSR 96–7p, http:// www.ssa.gov/ OP_Home/ rulings/di/01/ SSR96-07-di-01. html (visited Feb. 25, 2013).

The ALJ dismissed Plaintiff's fibromyalgia by stating, "The medical record is absent of a medical examination detailing the number of [Plaintiff's] tender points, [the] site of the tender points, and [the] mode of treatment and its compliance." (Tr. 26.) That is not an observation about Plaintiff's ability to function with her fibromyalgia; it is, rather, an expression of doubt about whether Plaintiff even has fibromyalgia. The treating physician, the state-appointed physician, and a third physician each acknowledged Plaintiff's fibromyalgia. (Tr. 524, 692, 744.) The treating physician said Plaintiff has tender points all over, and both she and the third doctor concluded that Plaintiff's fibromyalgia essentially cripples her. The ALJ cited no medical evidence. Rather than question the fact of Plaintiff's fibromyalgia, she needed to analyze in detail Plaintiff's own claims.

She never did. Early in her decision, she wrote that Plaintiff's statements about her symptoms "are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 21.) As confirmed by the reference to an assessment "above" that does not exist, this statement is an SSA template that the ALJ

6

pasted into her decision.  It is not even a good template, as it misses that a claimant's credibility informs her residual functional capacity, not the other way round.  *See Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012).  It also contradicts the Sixth Circuit's instruction to avoid "over-emphasis upon objective findings."  *Rogers*, 486 F.3d at 248.

> Later in her decision, the ALJ said:
>
> [Plaintiff] received conservative treatment and she was diagnosed with mostly mild symptoms, fact[s] that do[] not support a finding of greater limitation than indicated by the objective evidence.  Accordingly, I find [Plaintiff's] symptoms somewhat exaggerated over [w]hat would be expected based on the medical findings in the record.

(Tr. 27.)  This passage, perhaps another template, raises several questions.  First, what "non-conservative" treatment did the ALJ have in mind?  Plaintiff testified that her medication causes strong side-effects and that her doctors said all she can do at this point is "keep moving."  (Tr. 46.)  Second, by what criteria does the ALJ judge Plaintiff's diagnosed symptoms to be "mild"?  The treating physician said, for example, that Plaintiff cannot lift more than five pounds.  Third, what did the ALJ mean by "mostly" mild symptoms?  A "few" severe symptoms—the inability to sit or walk, for instance—can disable a claimant.  Fourth, how is a record of treatment and diagnosis not "objective evidence"?  Although she was not supposed to place too much "emphasis on objective findings," 486 F.3d at 248, the ALJ said, in effect, that objective evidence confirmed the objective evidence.  Finally, fifth, and most important of all, how did Plaintiff's testimony conflict with "the medical findings in the record"?  The ALJ never explained.  She needed to provide more than "brief" analysis, *id.*; instead, she provided none.

7

According to the SSA, "The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility." SSR 96–7p. The ALJ's assertions amount to nothing more than a proclamation of her intuition. Her unreasoned dismissal of Plaintiff's testimony must be reversed.

The ALJ wrote a lot of words. The main body of her decision, however, is merely a long and undifferentiated rehash of Plaintiff's abundant medical history—a procession of relevant facts and plainly irrelevant facts, and of facts both supporting and not supporting the ALJ, with no sign, at any point, of which facts the ALJ found important, of which she found unimportant, or of why she found some important and not others. The administrative decision, for all its words, leaves both the claimant and a reviewing court unable to determine the ALJ's driving logic. The Government repeatedly draws (selectively) on the background provided by the ALJ for facts that, it says, the ALJ used to support her decision. But that is improper. The reasons for discounting a treating source's opinion or a claimant's testimony must come from the ALJ herself. *Wilson*, 378 F.3d at 544-45; *Karger v. Comm. of Soc. Sec.*, 414 F.App'x 739, 754-55 (6th Cir. 2011); *see SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943). On remand, an ALJ will either state her reasons or award benefits.

Accordingly, IT IS ORDERED that Plaintiff's objections [Dkt. # 15] are SUSTAINED, that the report and recommendation [Dkt. # 14] is REJECTED, that the Government's motion for summary judgment [Dkt. # 13] is DENIED, that Plaintiff's motion for summary judgment [Dkt. # 9] is GRANTED, and that the decision of the SSA is REVERSED. This action is REMANDED to the SSA for further proceedings consistent with this opinion.

                                s/Robert H. Cleland  
                                ROBERT H. CLELAND  
                                UNITED STATES DISTRICT JUDGE

Dated: February 28, 2013

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 28, 2013, by electronic and/or ordinary mail.

                                s/Lisa Wagner  
                                Case Manager and Deputy Clerk  
                                (313) 234-5522